## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

December 11, 2009

Stephen F. Shea, Esq.
801 Roeder Road, Suite 550
Silver Spring, MD 20910

Allan Loucks, Esq.
Assistant United States Attorney
36 South Charles Street, 4th Floor
Baltimore, MD 21201

> Re:  Ronald Hood v. Michael J. Astrue, Commissioner Social
>      Security, Civil No. SKG-08-2240

Dear Counsel:

Plaintiff, Ronald Hood, by his attorney, Stephen F. Shea, Esquire, filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1382(c)(3), who denied his claims for Supplemental Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") under Title II of the Social Security Act ("the Act").  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if the proper legal standards were employed. Craig v. Chater, 76 F. 3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F. 2d 514, 517 (4th Cir. 1987).

This case has been referred to the undersigned magistrate judge by consent of the parties pursuant to 28 U.S.C. § 636(c) and Local Rule 301.  (Paper No. 6).  Currently pending before this Court are cross motions for summary judgment.  (Papers No. 9 and 17).  No hearing is required in this case. Local Rule 105.6. For the reasons stated below, this Court GRANTS Mr. Hood's request for remand, but DENIES both parties' motions for summary judgment.

## I. Procedural History

Mr. Hood originally filed for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") on October 29, 2004.[1]  (R. 85-88, 277-81).  Mr. Hood's application was denied initially and upon reconsideration by the Social Security Administration, and by an Administrative Law Judge ("ALJ") following a hearing.  (R. 30-34).  Plaintiff sought and was denied review by the Appeals Council of the Social Security Administration.  (R. 5-7).  Accordingly, the ALJ's decision is the final reviewable decision of the agency.  Mr. Hood requests review of the agency's decision, pursuant to 42 U.S.C. § 405(g).

## II. Factual Background

This Court has reviewed the Government's Statement of Facts and adopts it without supplementation.

---

[1] Both parties' motions state that the claimant first filed on 10/12 but the date in the record is 10/29. Compare (R. 85, 277) with (Paper No. 9, 1) and (Paper No. 17, 2).

### III. ALJ Findings

In evaluating a claimant's disability claim, the ALJ must follow a sequential five step process.  20 C.F.R. § 416.920 (2009).  After proceeding through the first four steps, the ALJ in this case concluded that Mr. Hood was not disabled and not entitled to Social Security Benefits.  The ALJ concluded that if plaintiff abstained from alcohol and drug abuse he would not meet the listing requirements for disability and would retain the residual functioning capacity to perform past relevant work.  (R. 18).

The first step of the sequential five step process requires the claimant to establish that he is not engaged in "substantial gainful activity" ("SGA").  § 416.920(a)(4)(I).  If the ALJ finds that the claimant is not engaged in SGA then the claimant is not disabled as that term is defined by the Social Security Act.  § 416.920(a)(4)(I).  In making that determination, the primary consideration of the ALJ is the earnings that the claimant derives from employment. 20 C.F.R. § 404.1574 (a)(1).  In the instant case, the ALJ determined that Mr. Hood had not engaged in SGA since February 1, 2000.  The ALJ based his conclusion on the fact that, although Mr. Hood retained employment briefly in 2002, his earnings from that job were less than the monthly average required to meet the regulatory standard of SGA.  (R. 15); see 20

C.F.R. § 404. 1574(b)(1)(ii) (setting forth the monthly income requirements for a claimant to have presumably engaged in SGA).

The second step of the inquiry requires the ALJ to determine whether the claimant has a severe, medically determinable impairment or a combination of impairments that limit the claimant's ability to perform basic work activities.  § 416.920(a)(4)(ii); § 416.920(c).  An impairment may be either exertional or non-exertional.  20 C.F.R. § 416.929a(a). "Exertional limitations" involve sitting, standing, walking, lifting, carrying, pushing, and pulling. § 416.969a(b).  A "non-exertional" limitation is one such as a mental impairment that affects the claimant's ability to maintain attention or understand and remember detailed instructions.  20 C.F.R.§ 416.969a(c); <u>see also</u> SSR 85-15.  For an impairment to be severe, it must limit a person's basic work activities for a continuous period of 12 months.  20 C.F.R. § 416.909.  If the claimant does not have a severe medically determinable impairment, then he is not disabled.  §416.920(a)(4)(ii).  The ALJ determined that Mr. Hood has the following severe non-exertional impairments: affective disorder, borderline intellectual functioning, polysubstance abuse disorder, and personality disorder.  (R. 15). The ALJ based his conclusion on medical examinations conducted by Dr. Nicola Cascella, Dr. Nancy T. McDonald, and Dr. Byung Ahn. (R. 15).

4

The third step of the ALJ's inquiry requires the judge to determine whether the claimant's impairments, if severe, meet the listing requirements in appendix 1 to subpart P of part 404 of the Social Security Act.  20 C.F.R. § 416.920(a)(4)(iii).  The ALJ concluded that Mr. Hood's impairments met the following listed impairments:  12.04 (Affective Disorder) and 12.06 (Anxiety Related Disorder).  (R. 16).  For a claimant to meet the full criteria for the 12.04 listing, the claimant must prove that he meets the criteria of both part "A" of that section, which specifically enumerates symptoms of the disorder, and part "B", which enumerates limitations in functioning, or the claimant must prove that he meets the criteria of part "C" which is a "complete inability to function" outside the home.  20 C.F.R. Part 404, Appendix I to Subpart P (Listing of Impairments).  The ALJ concluded that Mr. Hood met the 12.04 listing because there was substantial evidence that he met the criteria for part "A" of that listing and that, while abusing alcohol and cocaine, he showed moderate restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies in concentration, persistence, or pace resulting in the failure to complete tasks in a timely manner, thus meeting the criteria for part "B" of that listing.  (R. 16).

To meet the listing requirements of 12.06, the claimant must prove that he meets the criteria of both part "A" of that

listing, which enumerates symptoms, and the criteria of part "B"
of that listing, which enumerates criteria identical to part "B"
of 12.04, or the claimant must prove that he meets the criteria
of both part "A" and part "C", which contains identical criteria
to part "C" of 12.04.  20 C.F.R. Part 404, Appendix I to Subpart
P (Listing of Impairments).  While the ALJ concluded that Mr.
Hood did not specifically meet the criteria for part "A" of
listing 12.06, the ALJ found that Mr. Hood met the full criteria
for that listing because, while abusing alcohol and cocaine, he
met the criteria for part "B" of 12.06, and Mr. Hood demonstrated
objective symptoms of bipolar disorder/depression and anxiety and
his anxiety disorder constituted a medically determinable
impairment.  (R. 16).

An additional step is added to the inquiry when there is
medical evidence that the claimant has an alcohol or drug
addiction.  When a claimant is disabled and medical evidence
demonstrates that the claimant has an alcohol or drug addiction,
the ALJ must consider whether the addiction is a "contributing
factor material to the determination of disability."  20 C.F.R. §
404.1535.  If the claimant's alcohol or drug use is a
contributing factor, then the claimant is not disabled and not
entitled to benefits.  42 U.S.C. § 423(d)(2)(C).  To determine
whether alcohol or drug use is a "contributing factor," the ALJ
will examine whether the claimant would still be found disabled

6

absent his drug or alcohol use, based upon the mental and
physical impairments that would remain if the claimant abstained
from alcohol and drug use.  20 C.F.R. § 404.1535(b)(1)-(2).  If
the remaining limitations are not disabling, the alcohol or drug
use is a contributing factor material to the determination of
disability.  § 404.1535(b)(2)(I).  The ALJ concluded that if Mr.
Hood abstained from alcohol and drug use, he would not meet the
listing criteria for either 12.04 or 12.06.  The ALJ based his
conclusion on the fact that Mr. Hood would then fail to meet the
criteria for part "B" of both sections because he would only have
mild restrictions in activities of daily living, mild
difficulties in maintaining social functioning, moderate
deficiencies of concentration and attention, and there were no
episodes of decompensation when Mr. Hood was not abusing drugs or
alcohol.  (R. 18).  Therefore, the ALJ concluded that if Mr. Hood
abstained from alcohol and drug use he would not meet any listing
requirements for disability.

        If the claimant does not meet the listing requirements for
disability, the fourth step of the inquiry requires the ALJ to
consider whether the plaintiff retains the residual functional
capacity ("RFC") to perform past relevant work.  20 C.F.R. §§
404.1520(e), 416.920(e).  If the claimant retains the capacity to
perform past relevant work, then the claimant is not disabled and
the ALJ's inquiry ends there.  20 C.F.R. § 404.1520(f).  The ALJ

determined that if Mr. Hood stopped his substance abuse, he would
have the RFC to perform past relevant work as a laborer, a
cleaner, an assembler and a warehouse worker.  (R. 19-20).  The
ALJ's conclusion was based on Mr. Hood's testimony about his drug
use and how he functioned when he was not using drugs, the
medical records regarding Mr. Hood's social functioning when he
was drug-free and undergoing mental health treatment, and Dr.
McDonald and Dr. Freedenburg's testimony regarding Mr. Hood's
ability to function if he did not abuse drugs or alcohol.  (R.
20).

        If the ALJ finds that the claimant cannot perform past
relevant work then the ALJ proceeds to the fifth and final step
of the determination, which is whether, in light of such factors
as age, education, work experience, and RFC, the claimant is
capable of other work in the national economy.  20 C.F.R. §
404.1520(g).  Here, the burden of proof shifts to the agency to
establish that the claimant retains the RFC to engage in an
alternative job existing in the national economy.  McClain v.
Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983).  Here, because
the ALJ concluded that Mr. Hood retained the RFC to perform past
relevant work, the ALJ did not reach step five of the inquiry
process.

        Therefore, the ALJ concluded that if Mr. Hood abstained from
drugs and alcohol he would not be disabled and would retain the

residual functional capacity to perform past relevant work.
Thus, the ALJ deduced that Mr. Hood's substance abuse was a
material factor contributing to the determination of disability
and Mr. Hood is not disabled within the meaning of the Social
Security Act.  (R. 21).

## IV. Standard of Review

     The function of this Court on review is to determine upon
the whole record whether the agency's decision is supported by
substantial evidence.  42 U.S.C. § 405(g); Richardson v. Perales,
402 U.S. 389 (1971); Blalock v. Richardson, 483 F.2d 773, 775
(4th Cir. 1972).  The phrase "substantial evidence" means
"evidence which a reasoning mind would accept as sufficient to
support a particular conclusion.  It consists of more than a mere
scintilla of evidence but may be somewhat less than a
preponderance."  Blalock, 483 F.2d at 776 (citations omitted).

     In reviewing the decision, this Court will not re-weigh
conflicting evidence, make credibility determinations, or
substitute its judgment for that of the Commissioner.  Hays v.
Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Craig v. Chater,
76 F.3d 585, 597 (4th Cir. 1979).  The Commissioner, as a fact
finder, is responsible for resolving conflicts in the evidence.
Snyder v. Ribicoff, 307 F.2d 518, 520 (4th Cir. 1962).  If the
Commissioner's findings are supported by substantial evidence,

9

this Court is bound to accept them.  <u>Underwood v. Ribicoff</u>, 298

F.2d 850, 851 (4th Cir. 1962).

However, this Court will not adopt the Commissioner's

decision if "it was reached by means of an improper standard or

misapplication of the law."  <u>Coffman v. Bowen</u>, 829 F.2d 514, 517

(4th Cir. 1987).  This Court is given the authority to affirm,

modify, reverse, or remand the case to the agency.  42 U.S.C. §

405(g); <u>Melkonyan v. Sullivan</u>, 501 U.S. 89, 98 (1991).

**V. Discussion**

On appeal, Mr. Hood asserts that:  1) the ALJ failed to

properly consider whether Mr. Hood's mental retardation met a

listing at step three of the sequential evaluation process; 2)

the ALJ failed to apply the proper drug and alcohol standard in

determining that Mr. Hood was not disabled; 3) the ALJ failed to

properly develop the administrative record; and 4) the ALJ

erroneously assessed Mr. Hood's residual functional capacity.

(Paper No. 9).

After careful evaluation of the record, this Court finds

that the ALJ should have considered the 12.05 listing for mental

retardation (and, in so doing, resolve conflicts in the record),

failed to fulfill his duty of explanation when evaluating Mr.

Hood's substance abuse in that he did not cite to specific

medical evidence or resolve conflicts in the record, and finally

erroneously assessed the plaintiff's residual functional capacity

in that he did not do the requisite function by function analysis
and narrative discussion.  However, this Court rejects Mr. Hood's
other arguments.  Therefore, this Court finds that the ALJ's
decision was reached by "means of an improper standard" and
remands this case to the agency.

A. The ALJ Erroneously Failed to Consider the 12.05 Listing for
Mental Retardation and, In So Doing, Failed to Resolve Conflicts
in the Record.

The burden of proof is on the claimant to establish whether
his impairment meets or is medically equivalent to the listed
impairment.  Harper v. Bowen, 854 F.2d 678, 679 (4th Cir. 1988);
Blalock, 483 F.2d at 774.  When there is "ample evidence in the
record to support a determination" that the claimant's impairment
meets or equals one of the listed impairments, the ALJ must
identify "the relevant listed impairments" and compare "each of
the listed criteria to the evidence of [the claimant's]
symptoms."  Cook v. Heckler, 783 F.2d 1168, 1172-73 (4th Cir.
1986).  "Under *Cook,* the duty of identification of relevant
listed impairments and comparison of symptoms to listing criteria
is only triggered if there is ample evidence in the record to
support a determination that the claimant's impairment meets or
equals one of the listed impairments.  Neither the Social
Security law nor logic commands an ALJ to discuss all or any of
the listed impairments without some significant indication in the

record that the claimant suffers from that impairment." <u>Ketcher</u>
<u>v. Apfel</u>, 68 F. Supp. 2d 629, 645 (D. Md. 1999).

To meet the listing requirements for mental retardation, it
is sufficient for the claimant to show that he has "a valid
verbal, performance, or full scale I.Q. of 60 through 70 and a
physical or other mental impairment imposing an additional and
significant work-related limitation of function." 20 C.F.R. Part
404, Subpt. P, Appx. 1, 12.05(d).  Mr. Hood contends that he
meets the listing requirements for 12.05 (1) because he has low
I.Q. scores within the range of 60-70, as assessed by Dr.
McDonald, and the ALJ improperly disregarded those scores and (2)
because he has additional and significant work-related
limitations. (Paper No. 9, 6-7).  This Court finds that although
the record does not definitively establish that Mr. Hood meets
the listing requirement for 12.05, the ALJ should have considered
and discussed that listing in his opinion before dismissing it.

First, the ALJ improperly disregarded Mr. Hood's adult I.Q.
scores.  Dr. McDonald found Mr. Hood's adult I.Q. to be below the
threshold for the first prong of the listing requirement for
mental retardation.  (R. 173) (revealing a full scale I.Q. of
67).  The record demonstrates that Mr. Hood's I.Q. scores were
not of questionable validity, but rather, that his memory test
results were questionable.  (R. 173) (stating that "[t]he results

12

of the intellectual assessment appear to be valid" yet finding
that "the results of the memory assessment are somewhat suspect
due to his frivolous manner").  Indeed, Dr. McDonald diagnosed
Mr. Hood with mental retardation.  (R. 172).  Judicial review by
this Court requires an inquiry into whether "factual conclusions"
of the ALJ are based on substantial evidence.  Storck v.
Weinberger, 402 F. Supp. 603, 605 (D. Md. 1975).  Thus, where an
ALJ's factual conclusions are not based on *any* evidence in the
record and/or are in direct contradiction to the evidence in the
record and the contradictory evidence is not discussed, those
conclusions cannot be deemed based on substantial evidence.  See
Blalock, 483 F.2d at 776 (requiring more than a mere "scintilla"
of evidence to find substantial evidence).  Thus, the ALJ
improperly disregarded Mr. Hood's adult I.Q. scores during his
step three analysis.

   Given both this 67 IQ score and Dr. McDonald's diagnoses,
the ALJ should have considered and discussed the 12.05 listing
requirement.  See also Cook, 783 F.2d at 1172 (finding there was
sufficient medical evidence to require a discussion of the
listing requirement for arthritis when claimant had a history of
joint pain and significant limitations of motion-symptoms);
Ketcher, 68 F. Supp. 2d at 645 n.34 (remanding for consideration
of listing for vertebrogenic disorder when there was sufficient
relevant evidence in the record to require consideration of that

13

listing); <u>Perkins v. Apfel</u>, 101 F. Supp. 2d 365, 375 (D. Md. 2000)(finding that at the very least one physician's notation of cardiovascular impairments triggered the ALJ's duty to discuss why certain listings were not met or equaled).

While evidence in the record may not ultimately support a finding that Mr. Hood meets the 12.05 listing requirements, it is the role of the Commissioner to make and explain that determination and not this Court. <u>Craig v. Chater</u>, 76 F.3d 585, 597 (4th Cir. 1979).  In addition to Dr. McDonald's testing and diagnosis, the record contains other medical evidence that Mr. Hood suffers from Borderline Intellectual Functioning. (R. 128) (diagnosis of Mr. Hood with Borderline Intellectual Functioning by Dr. Cascella); (R. 261) (diagnosis of Mr. Hood with Borderline Intellectual Functioning by Dr. Ahn).

Adult IQ tests are not determinative since the listing requires the claimant to prove that "the evidence demonstrates or supports onset of the impairment <u>before age 22</u>"(emphasis added). Nor, however, are the IQ tests done at age 8 determinative. WISC-R tests done when Mr. Hood was 8 years old resulted in a verbal IQ of 75 and a performance IQ of 84 and a full scale IQ of 78 (above the listing requirements).  (R. 219).  However, the report continued that "upon close examination of his performance, his abilities appear more disparate than the IQ scores seem to indicate." (R. 219).  However, in light of Dr. McDonald's report

and Mr. Hood's low IQ scores, there is conflicting evidence
regarding Mr. Hood's intellectual functioning and the ALJ should
have resolved that conflict in his opinion, discussing all the
evidence on this point.  Snyder v. Ribikoff, 307 F.2d 518, 520
(4th Cir. 1962) (finding it is the role of the ALJ to resolve
conflicts in the evidence and not the court).

Thus, while there was evidence in the record to suggest that
Mr. Hood did not meet the 12.05 listing requirements, the ALJ was
required to discuss that listing and resolve the conflicts that
existed between that evidence (scores at 8 years) and Mr. Hood's
adult I.Q. scores (at 34 years) and Dr. McDonald's diagnosis.
Accordingly, the ALJ should have discussed all relevant evidence
to determine whether onset occurred prior to 22.[2]

B. The ALJ Applied the Correct Drug and Alcohol Standard, But
Failed to Sufficiently Explain His Conclusions.

The Social Security Act specifies that "[a]n individual
shall not be considered to be disabled for purposes this title if
alcoholism or drug addiction would (but for this subparagraph) be
a contributing factor material to the Commissioners'
determination that the individual is disabled."  42 U.S.C. §
423(d)(2)(C).  To determine whether a claimant's substance use is

---

[2] The ALJ does not discuss Dr. Freedenberg's testimony, tending to
credit the earlier, higher scores more than the later scores.
However, Dr. Freedenberg does not appear to have testified to a
reasonable degree of medical certainty nor does his testimony seem
grounded on a careful review of all the records over the relevant
period fo time.  In any event, the ALJ should discuss on remand.

material, the key factor the ALJ will consider is "whether [the ALJ] would still find [the claimant] disabled if [the claimant] stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). To make this determination, the ALJ will evaluate whether any of the claimant's mental and physical limitations upon which the ALJ based the determination of disability would continue if the claimant abstained from alcohol or drug use. § 404.1535(b)(2). Then, the ALJ must determine whether those remaining impairments are disabling. § 404.1535(b)(2). If the ALJ concludes that the remaining impairments are not disabling, then the claimant's alcohol or drug use is a contributing factor material to the determination of disability and the claimant is not entitled to benefits under the Act. § 404.1535(2)(ii); 42 U.S.C. § 423(d)(2)(C).

Mr. Hood alleges that the ALJ failed to follow the proper protocol because the ALJ was under a duty, imposed by regulation, to "obtain a medical assessment of the Plaintiff's mental and physical limitations with and without substance abuse." (Paper No. 9, 9). This Court rejects this argument, however, because the regulations plainly do not impose such a duty on the ALJ. See 20 C.F.R. § 404.1535(b)(2)(requiring the ALJ to determine what limitations would remain in the absence of substance abuse but not requiring an independent "medical assessment"). Therefore, Mr. Hood's claim that the ALJ failed to follow the

16

proper protocol when assessing Mr. Hood's substance abuse disorder is unfounded.

This Court is otherwise unable to review whether the AlJ's findings are based on substantial evidence because the ALJ failed, in part, to support his conclusions by citing to the medical evidence and by resolving conflicts in the evidence.

The ALJ first considered the mental and physical limitations that would remain if Mr. Hood abstained from drugs and alcohol. (R. 17-18).  The ALJ concluded that those limitations included borderline intellectual functioning and depression and that they were severe.  (R. 18).  This conclusion was based on substantial evidence contained in the record.  (See R. 134) (diagnosing Mr. Hood in 1997 with depression); (R. 147) (diagnosing Mr. Hood in 2005 with borderline intellectual functioning and major depressive disorder); (R. 175) (diagnosing Mr. Hood with major depressive disorder); (R. 259) (diagnosing Mr. Hood with borderline intellectual functioning).

Next, the ALJ considered whether Mr. Hood's impairments would not be disabling if Mr. Hood abstained from drugs and alcohol.  Here, the ALJ failed to indicate what medical evidence he relied upon in reaching his conclusion and failed to discuss contradictory yet probative evidence, reject that evidence, and include a rationale for that rejection.  (R. 18).  In See v.

17

<u>Washington</u>, 36 F.3d 375 (4th Cir. 1994), the court stated "[t]his court has long required specific references to the evidence supporting an ALJ's decision as part of the ALJ's 'duty of explanation.'"   <u>Id.</u> at 384 (citing <u>Hammond v. Heckler</u>, 765 F.2d 424, 426 (4th Cir. 1985) and <u>King v. Califano</u>, 615 F.2d 1018, 1020 (4th Cir. 1980)).   It stated, "when faced with evidence in the record contradicting his conclusion, the ALJ must affirmatively reject that contradictory evidence and explain his rationale in so doing."   <u>See</u>, 36  F.3d at 384 (citing <u>CNA Ins. Co. v. Legrow</u>, 935 F.2d 430, 436 (1st Cir. 1991) and <u>Smith v. Heckler</u>, 782 F.2d 1176, 1181 (4th Cir. 1986)).   Here, the ALJ deduced that Mr. Hood, if he abstained from drugs and alcohol, would fail to meet the listing requirements for part 12.04 (affective disorders) and 12.06 (associative disorders) because he would only have *mild* and not marked restrictions in daily living, social functioning, and concentration.   (R. 18).   The ALJ supported that conclusion by stating "there is no evidence of any episodes of decompensation at work or in work-like settings of extended duration when [Mr. Hood is] not using/abusing substances."   (R. 18).   While there is some evidence in the record to support this conclusion, the ALJ failed to cite such evidence in making his conclusion.   (R. 18); <u>see also</u> (R. 162) (finding no episodes of decompensation of extended duration); <u>see</u> (R. 194, 175) (finding, in November 2005, one or two extended

episodes of decompensation while Mr. Hood was abusing alcohol and
cocaine).  In addition, there is some contradictory medical
evidence on this point.  <u>See</u> (R. 152, 162) (evaluation by Dr.
Peterson in April 2005 where physician found claimant was
suffering from drug addiction yet reported no episodes of
decompensation); (R. 201) (Essex Medical Center report in October
2005 finding Mr. Hood was not presenting symptoms of substance
abuse yet finding three or more episodes of decompensation); (R.
205) (Essex Medical Center report in February 2006 finding no
substance abuse, although reporting Mr. Hood drank two to three
beers per day, and finding three or more episodes of
decompensation).  When there is conflicting evidence on the
record it is not the role of this Court to supplant the fact
finding of the Commissioner.  Rather, this Court will defer to
the ALJ's resolution so long as it is based on substantial
evidence.  <u>Craig</u>, 76 F.3d at 589 (stating "[w]here conflicting
evidence allows reasonable minds to differ . . . the
responsibility for that decision falls on the Secretary");
<u>Blalock</u>, 483 F.2d at 775; <u>Underwood</u>, 298 F.2d at 851 (allowing
the court to accept the ALJ's resolution only if the ALJ's
decision is based on substantial evidence).  However, this Court
cannot ascertain whether the ALJ's conclusions of fact are based
on substantial evidence, if the ALJ fails to provide a basis for
his conclusions and reasons for rejecting probative evidence.

See, 36 F.3d at 384 (stating that "[s]ince it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper") (citing Cotter v. Harris, 642 F.2d 799, 705-07 (3d Cir. 1981)).  Here, the ALJ failed to resolve the conflicting evidence regarding Mr. Hood's episodes of decompensation when he abstained from drug and alcohol use.  In so doing, the ALJ failed to indicate as to which evidence he gave great weight and, if he rejected evidence, failed to provide a rationale for that rejection.  In light of that failure, this Court cannot determine whether the ALJ's decision was based on substantial evidence.

Thus, while the ALJ followed the proper protocol in assessing whether Mr. Hood's drug and alcohol use was a material factor to the determination of disability, because the ALJ failed to meet his duty of explanation, this Court remands for further discussion.

C. The ALJ Properly Developed the Record.

The ALJ is under a duty to properly develop the record so that this Court can evaluate whether the ALJ's conclusions are based on substantial evidence. Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986).  "The ALJ has a duty to explore all

relevant facts and inquire into issues necessary for adequate development of the record and cannot rely on evidence submitted by the claimant when that evidence is inadequate." Id. at 1173. Thus, "evidentiary gaps that result in unfairness or clear prejudice require a remand." Flemming v. Barnhart, 284 F. Supp. 2d 256, 272 (D. Md. 2003) (citing Brown v. Shalala, 44 F.3d 931, 935-36 (11th Cir. 1995)). However, that does not mean that "a remand is warranted any time the claimant alleges that the ALJ has neglected to complete the record." Brown, 44 F.3d at 935 n.9. To develop the record, the ALJ must recontact the claimant's medical source when there is inadequate information to determine whether the claimant is disabled and "when the report from [the claimant's] medical source contains conflict or ambiguity, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e) (2008). In addition, this Court has held that "the regulations make clear that the duty to recontact a medical source arises only when the evidence as a whole is inadequate to determine the issue of disability." Michaels v. Barnhart, No. CCB-02-CV-0124, slip op. 45 (D. Md. March 26, 2003).

Mr. Hood urges this Court to find that the ALJ failed to properly develop the record because the ALJ did not recontact Dr.

McDonald, Dr. Friedman, and Dr. Ahn.  However, the ALJ was not under a duty to recontact them because there is no conflict or ambiguity in the reports filed by these sources and the record as a whole is adequate to determine disability.  In addition, the ALJ sufficiently developed the record regarding the factual issues stemming from these reports.

First, there is no conflict in Dr. McDonald's medical report regarding Mr. Hood's low I.Q. scores.  The claimant alleges that the ALJ's conclusion that Mr. Hood's lower I.Q. scores are invalid conflicts with Dr. McDonald's finding to the contrary. (Paper No. 9, 12).  However, while the claimant correctly alleges that a conflict exists, that conflict is not *contained* in Dr. McDonald's report but rather exists between the report and the ALJ's conclusion.[3]  A conflict between the ALJ's determination and the report of a physician does not trigger the obligation of the ALJ to recontact. 20 C.F.R. § 404.1512(e) (plainly requiring recontacting only when there is a conflict contained in the actual physician's report); see also Turner v. Astrue, No. 8:08-cv-1722-T-T, slip. op. *6 (M.D. Fla. Sep. 21, 2009)(finding where physician's report "contained no conflict or ambiguity and otherwise contained all the information the doctor had to offer" the ALJ was under no duty to recontact that physician).

---

[3] The ALJ's decision to discount Mr. Hood's low I.Q. scores, albeit erroneous, is not dispositive of whether the ALJ properly developed the record.

Therefore, the ALJ properly declined to recontact Dr. McDonald to clarify Mr. Hood's I.Q. scores.

In addition, the ALJ had no duty to recontact because there is sufficient evidence in the record as a whole to determine claimant's disability.  The ALJ was not required to recontact Dr. McDonald to supplement evidence of Mr. Hood's intellectual functioning. The record contains medical evidence that Mr. Hood suffers from borderline intellectual functioning and therefore is complete with regard to this fact.  (R. 128, 261) (recording Dr. Cascella and Dr. Ahn's diagnosis of Mr. Hood with Borderline Intellectual Functioning); (R. 325) (recording Dr. Freedenburg's testimony that Mr. Hood was diagnosed with Borderline Intellectual Functioning).  That evidence fully comports with Mr. Hood's diminished adult I.Q. scores.  (R. 173).  Therefore, as to Mr. Hood's intellectual functioning, the record as a whole is adequately developed to ascertain Mr. Hood's disability, and therefore recontacting Dr. McDonald was not required.

Next, Mr. Hood urges this Court to find that the ALJ was required to recontact Drs. Friedman and Ahn regarding Mr. Hood's functioning with and without substance abuse.  (Paper No. 9, 12-13).  However, the ALJ properly developed the record with regard to Mr. Hood's functioning when he abstained from using drugs and alcohol.  Following the recommendation of Dr. Freedenburg, the

ALJ obtained Mr. Hood's childhood records from Villa Maria which documented his functioning during a period of abstinence from drugs and alcohol.  (R. 20).  Based on that evidence the ALJ concluded that, "when not using drugs/alcohol and participating in his treatment program on a regular basis, he is able to function within society without significant problems."  (R. 20). The ALJ's development of the record by obtaining the Villa Maria records well exceeds the development of the record that this Court has found to be inadequate.  See Cook, 783 F.2d at 1173 (finding that the ALJ failed to properly develop the record when the ALJ did not obtain any lab tests or medical records regarding claimant's demonstrated arthritis when such evidence was already part of the record); Brown, 44 F.3d at 935 (finding that the ALJ failed to develop the record when the ALJ did not obtain claimant's most recent medical records); Flemming, 284 F. Supp. 2d at 273  (finding the ALJ should recontact where the record contained no surgical, inpatient, or rehabilitative records for the claimant although the claimant was treated in that capacity for over five months after his accident).  Therefore, the factual record in this case is, as a whole, sufficient to determine Mr. Hood's disability.  Therefore, the ALJ was under no duty to recontact any of Mr. Hood's physicians.

    D. The ALJ Failed to Properly Assess Mr. Hood's Residual Functioning Capacity ("RFC").

Mr. Hood asserts that the ALJ erred at step four by failing to properly determine his RFC in accordance with Social Security Ruling 96-8p.  Specifically, Mr. Hood alleges that the ALJ failed to: (1) conduct a function by function analysis of Mr. Hood's RFC; or (2) produce a narrative discussion linking the evidence to the ALJ's conclusions regarding Mr. Hood's RFC. (Paper No. 9, 14).  In response, defendant asserts that the ALJ specifically discussed Mr. Hood's ability to perform "complex and detailed tasks and instructions" and "discussed the medical evidence in the record," and therefore was in compliance with Social Security Ruling 96-8p.  (Paper No. 17, 17).

Social Security Ruling 96-8p and 20 C.F.R. § 404.1545 set forth the process an ALJ must follow to determine a claimant's RFC.  When making an RFC assessment, the ALJ must consider all of the relevant evidence in the record and all of the limitations imposed by plaintiff's severe and non-severe impairments.  20 C.F.R. § 404.1545(a)(3).  The assessment must be based solely on the individual's medically determinable physical or mental impairments. SSR 96-8p.  When assessing the claimant's mental abilities, the ALJ must consider the extent and nature of the claimant's mental limitations and the claimant's ability to perform continuous and sustained work activity on a regular and continuing basis, i.e. 8 hours a day five days a week or a similar work schedule.  20 C.F.R. § 404.1545(c); SSR 96-8p.  When

assessing the claimant's mental limitations, the ALJ must consider the claimant's limitations in "understanding, remembering, carrying out instructions," and using judgment, as well as his ability to respond appropriately to supervision, co-workers, and work pressures and changes in a work setting.  20 C.F.R. § 404.1545(c); SSR 96-8p; <u>see also</u> SSR 85-15 (setting forth those factors as primary considerations in a RFC assessment when a claimant has solely non-exertional limitations).

Of particular relevance here, the RFC assessment must include a "function by function" assessment. SSR 96-8p.  That assessment must identify (1) the individual's functional limitations or restrictions and (2) his or her work.  An ALJ must also include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and non-medical evidence . . ." SSR 96-8p.  Here, the ALJ committed two errors when assessing Mr. Hood's RFC.  First, the ALJ failed to properly conduct a "function by function" analysis of Mr. Hood's RFC as required by the Social Security Administration. Second, the ALJ failed to include a narrative discussion describing how the evidence supports each conclusion.

The ALJ failed to provide a complete function by function analysis of the impairments that Mr. Hood would still have if he abstained from alcohol and drugs.  The ALJ found that Mr. Hood

26

would have "more than a minimal impairment in his ability to function caused by his borderline intellectual functioning and life long history of depression." (R. 18).  The ALJ summarily concluded that Mr. Hood's functional capacity was limited "nonexertionally [sic] due to his psychologically based symptoms, in that the claimant should avoid complex and detailed tasks and instructions as found in skilled and semi-skilled work, but can understand, remember and carry out simple tasks and instructions." (R. 18).  The ALJ additionally found that when Mr. Hood is alcohol and drug free: (1) he is able to "function within society without normal problems"; (2) he can "work, date women, and socialize"; and (3) he "[is] able to function much better . . . [and] to take more responsibility for himself and [is] better able to control his behavior." (R. 20).

Those findings do not meet the RFC evaluation requirements of 20 C.F.R. § 404.1545 and SSR 96-8p.  Specifically, the ALJ did not discuss Mr. Hood's ability to (1) use judgment (2) respond appropriately to supervision, and co-workers; and (3) to respond to work pressures and work changes in a work setting. (R. 18-20).  The Social Security Administration requires the ALJ to consider those factors when assessing the RFC of a claimant who has solely non exertional limitations.  See 20 C.F.R. § 404.1545(c); SSR 96-8p.  Therefore, the ALJ failed to make the required considerations when assessing Mr. Hood's RFC.

27

Remand is appropriate when an ALJ fails to conduct the proper function by function analysis.  In <u>Schwemmer v. Barnhart</u>, No. SKG-02-2205, slip. op. (Nov. 3, 2003), this Court remanded based on the ALJ's failure to properly analyze the claimant's functional limitations stemming from her Borderline Intellectual Functioning when the ALJ did not separately consider limits on her ability to "(1) concentrate, understand, carry out and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers and work situations; (4) deal with changes in a routing work setting; and (5) her persistence and pace."  <u>Id</u>. at 39. Similarly, in <u>Bowie v. Barnhart</u>, No. SKG-02-3700, slip. op. (D. Md. Jan. 28, 2004), this Court found that the ALJ failed to properly conduct a function by function analysis, although he did provide a "comprehensive summation of the evidence and findings regarding the plaintiff's limitations."  <u>Id</u>. at 41.  The Court explained that "[t]he Social Security Administration, not the court, establishes exacting standards of analysis and explanation in this area."  <u>Id</u>.  Here, the ALJ failed to consider the factors set forth in Social Security Ruling 85-15 which establishes specific considerations that an ALJ must make when determining a claimant's RFC when the claimant has solely non-exertional limitations and the ALJ suspects the claimant can perform

28

unskilled work.   Therefore, similar to <u>Schwemmer</u> and <u>Bowie</u>, remand is appropriate.

Next, the ALJ failed to provide the required narrative discussion because the ALJ failed to link medical and non-medical evidence to his conclusions about Mr. Hood's RFC.  (R. 18-20). An ALJ's narrative discussion must "describe how the evidence supports each conclusion, citing specific medical facts (<u>e.g.</u>, laboratory findings) and non-medical evidence (<u>e.g.</u>, daily activities and observations).  SSR 96-p.  If the ALJ "makes no connection between the evidence she cited and the specific limitations she found the plaintiff to have" then the ALJ has not provided the requisite narrative.  <u>See</u> <u>Schwemmer</u>, No. SKG-02-2205 at 40.  Here, the ALJ cited to some medical evidence, <u>i.e.</u>, Dr. McDonald's examination and Dr. Freedenburg's testimony, and the Villa Maria clinical notes.[4]  In addition, the ALJ considered non-medical evidence including Mr. Hood's description of his work and social limitations and his mother's testimony about his functioning capacity.[5]  (R. 19).  However, the ALJ failed to

---

[4] Surprisingly, the ALJ did not refer to any of Mr. Hood's RFC Assessments. <u>See</u> (R. 162, 166, 194).

[5] During the ALJ's RFC analysis, the ALJ concluded that Mr. Hood's testimony regarding the "intensity, persistence and limiting effect" of his symptoms was not entirely credible.  (R. 19). Mr. Hood does not argue that the ALJ's credibility determination was erroneous. (<u>See</u> Paper No. 9). This Court finds that the ALJ correctly applied the two-part credibility process to find that Mr. Hood's personal testimony regarding his symptoms was not credible. <u>See</u> SSR 96-7p (setting forth the criteria for credibility determinations; <u>Craig</u>, 76 F.3d at 594 (providing the two-part test for credibility determinations in this jurisdiction). However, because the ALJ failed to provide a function

"make a connection" between this evidence and the ALJ's limited conclusions about Mr. Hood's RFC, and therefore did not provide the proper narrative discussion.

Therefore, the undersigned finds that the ALJ failed to conduct the proper function by function analysis or provide adequate narrative discussion when evaluating Mr. Hood's RFC.  On remand, the ALJ must reevaluate Mr. Hood's RFC in light of those errors.

**Conclusion**

For the foregoing reasons, this Court finds that the ALJ did not follow the proper legal standards and GRANTS the Mr. Hood's motion for REMAND.  Therefore, this case is remanded for further proceedings consistent with this opinion.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge

---

by function analysis evaluating Mr. Hood's RFC, in spite of the lack of credibility of his statements, remand is appropriate.